Citation Nr: 1811322 
Decision Date: 02/23/18 Archive Date: 03/06/18

DOCKET NO. 13-30 555 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUE

Entitlement to service connection for hypothyroidism, to include as due to exposure to contaminated water at Camp Lejeune and as secondary to service-connected breast cancer and/or breast cancer treatment.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

B. Lewis, Associate Counsel

INTRODUCTION

The Veteran served on active duty in the U.S. Marine Corps from February 1967 to July 1968.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky. The Veteran filed a Notice of Disagreement (NOD) in April 2012 and a Statement of the Case (SOC) was issued in July 2013. In September 2013, the Veteran filed a timely Substantive Appeal (VA Form 9). 

In October 2015, the Veteran testified at a videoconference Board hearing before the undersigned Veterans Law Judge (VLJ). A copy of the hearing transcript has been associated with the claims file.

This appeal was previously before the Board in February 2014 and January 2016, at which times the Board remanded the claim for further development. The matter is once again before the Board for appellate consideration of the issue on appeal.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record, as well as the Veteran's Virtual VA paperless claims file.


FINDINGS OF FACT

1. During the Veteran's active military service, she was stationed at Camp Lejeune during the period of time when the water was contaminated; thus, the Veteran was exposed to contaminated water during her active military service.

2. The Veteran's service-connected breast cancer was causally related to her active military service, to include exposure to contaminated water while stationed at Camp Lejeune.

3. The Veteran's hypothyroidism has not been shown to be related to her active military service, to include as due to exposure to contaminated water at Camp Lejeune; the Veteran's hypothyroidism has not been shown to be secondary to her service-connected breast cancer or to treatment for breast cancer. 


CONCLUSION OF LAW

The criteria for establishing service connection for hypothyroidism have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to notify and assist

As set forth in the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102-5103A, 5106, 5107, 5126 (2012).

VA's duty to notify was satisfied by a letter in July 2010. See 38 U.S.C. §§ 5102, 5103, 5103A (2012); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

VA has a duty to provide assistance to substantiate a claim. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159(c). The Veteran's service treatment records, private treatment records, VA medical records and examination, hearing testimony, and statements from the Veteran and her representative have been obtained. All relevant evidence has been obtained and associated with the record. Neither the Veteran, nor her representative, has identified any additional existing evidence that is not of record that is necessary for a fair adjudication of his appeal.

As noted above, in January 2016, the Board remanded this matter to the AOJ for additional development, specifically to obtain an opinion as to the nature and etiology of the Veteran's hypothyroidism. Such an opinion was provided in February 2016. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008); Dyment v. West, 13 Vet. App. 141 (1999). 

Accordingly, the Board finds that there has been substantial compliance with the January 2016 remand directives and no further remand is necessary. See Stegall, supra; D'Aries, supra. Thus, the Board finds that VA has fully satisfied the duty to assist. 

In summary, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C. §§ 5103(a) and 5103A, or 38 C.F.R. § 3.159, and that all necessary development has been accomplished. Therefore, appellate review may proceed without prejudiced to the Veteran. See Bernard v. Brown, 4 Vet. App. 384, 392-94 (1993).

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on her behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant).
II. Service Connection 

Applicable Laws and Regulations 

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (a) (2017). Service connection also may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d) (2017).

VA has acknowledged that persons residing or working at the U.S. Marine Corps Base Camp Lejeune between August 1953 and December 1987 were potentially exposed to drinking water contaminated with volatile organic compounds (VOCs). See VBA Manual M21-1, IV.ii.2.C.5.o. (2015). The contaminants included trichloroethylene (TCE) (a metal degreaser), perchloroethylene (PCE) (a dry cleaning agent), benzene, vinyl chloride, and other VOCs. Id. 

The chemical compounds involved have been associated by various scientific organizations with the possible development of certain chronic diseases. However, many unanswered questions remain regarding the extent of base water contamination, the type and duration of exposure experienced by base personnel and the likelihood that contaminant levels in the water supply were high enough to result in a particular disease. See VBA Manual M21-1, III.iii.2.E.7.a. (2015). 

While these issues are being studied, it will be assumed by VA that any given veteran who served at Camp Lejeune was potentially exposed in some manner to the full range of chemicals known to have contaminated the water there between 1957 and 1987. Id. 

The National Academy of Sciences' National Research Council (NRC) published its report, "Contaminated Water Supplies at Camp Lejeune, Assessing Potential Health Effects," in 2009. This report included a review of studies addressing exposure to TCE and PCE, as well as a mixture of the two, and a discussion of disease manifestations potentially associated with such exposure. Fourteen diseases were identified as having limited/suggestive evidence of an association with TCE, PCE, or a solvent mixture exposure. These include esophageal cancer, lung cancer, breast cancer, bladder cancer, kidney cancer, adult leukemia, multiple myeloma, myelodisplastic syndromes, renal toxicity, hepatic steatosis, female infertility, miscarriage with exposure during pregnancy, scleroderma, and neurobehavioral effects. See VBA Manual M21-1, IV.ii.1.L.15.a., Appendix B (2015). 

Effective March 14, 2017, 38 C.F.R. §§ 3.307 and 3.309 were amended to add eight diseases to the list of diseases associated with contaminants present in the water supply at U.S. Marine Corps Base Camp Lejeune, North Carolina, from August 1, 1953, to December 31, 1987. The amendments apply to claims received by VA on or after January 13, 2017, and claims pending before VA on that date. 82 Fed. Reg. 4173 (Jan. 13, 2017). In order to establish presumptive service connection for a disease associated with exposure to contaminated water at Camp Lejeune, a veteran, former reservist, or member of the National Guard must show the following: (1) that he or she served at U.S. Marine Corps Base Camp Lejeune, North Carolina for no less than 30 days (either consecutive or nonconsecutive) from August 1, 1953 to December 31, 1987; (2) that he or she currently suffers from a disease associated with exposure to contaminants in the water supply at Camp Lejeune enumerated under 38 C.F.R. § 3.309(f); and (3) that the current disease process manifested to a degree of 10 percent or more at any time after service. 38 C.F.R. §§ 3.307(a)(7), 3.309(f). 

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991). Equal weight is not necessarily accorded to each piece of evidence contained in the record; not every item of evidence necessarily has the same probative value.


Furthermore, in determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107 (West 2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, the benefit of the doubt will be given to the veteran. 38 U.S.C. § 5107 (b) (West 2012); 38 C.F.R. § 3.102 (2017).

Factual Background and Analysis

The Veteran contends that her hypothyroidism was caused by exposure to contaminated water while serving at Camp Lejeune. In addition, she alleges that it was caused by a medication, specifically Tamoxifen, used to treat her breast cancer. The Veteran reported that she lived in the WM Barracks while stationed at Camp Lejeune and worked in the industrial area known as Hadnot Point. She further reported that she was stationed at Camp Lejeune from April 1967 to November 1967, and from April 1968 to discharge in July 1968. However, the Veteran continued to live with her husband at Camp Lejeune until October 1969. See July 2010 Written Statement. Service personnel records substantiate that the Veteran had active duty service at Camp Lejeune.

Service treatment records are negative for any complaints, diagnoses, or treatment of any thyroid disorder. VA treatment records show the Veteran was diagnosed with hypothyroidism and started on medication to treat it in June 2009. 

The Board notes that thyroid disorders are not among the diseases presumed to be associated with exposure to Camp Lejeune water contaminants.

In September 2010, the Veteran submitted medical literature, entitled "Environmental chemicals targeting thyroid" and "Thyroid-Disrupting Chemicals: Interpreting Upstream Biomarkers of Adverse Outcomes," that generally discussed the adverse effects to thyroid functioning from exposure to certain environmental chemicals. 

In a September 2013 statement, the Veteran asserted that she had no indication of thyroid problems prior to her cancer diagnosis. She contended that studies indicate that chemicals can disrupt the functions of the thyroid, resulting in thyroid disease. See September 2013 Correspondence.
 
At her October 2015 Board hearing, the Veteran asserted that she did not have any problems with her thyroid until she was prescribed Tamoxifen to treat her service-connected breast cancer. She asserted that Tamoxifen affected many hormones in the body and contended that because the thyroid controls certain hormone functions that her condition was related to taking Tamoxifen. The Veteran reported that her thyroid condition was ongoing and that she was taking a medication called Levothyroxine as treatment. See October 2015 Hearing Transcript. 

As the Veteran provided evidence of a link between exposure to environmental chemicals and thyroid disorders, by way of the aforementioned medical literature, the Board found that a VA examination and medical opinion were necessary to resolve the issue on appeal. In the January 2016 remand, the Board instructed the VA examiner to offer an opinion as to whether it was at least as likely as not that the Veteran's hypothyroidism was proximately due to or the result of exposure to contaminated water at Camp Lejeune. The examiner was asked to consider the medical literature submitted by the Veteran. Additionally, given that the Board granted service connection for the Veteran's breast cancer, the examiner was asked to offer an opinion as to whether the Veteran's hypothyroidism was caused or aggravated by her service connected breast cancer, including medication used to treat breast cancer, specifically Tamoxifen. 

The Veteran was afforded a VA examination in February 2016. The opinion request included reference to the articles submitted by the Veteran. The examiner noted a diagnosis of hypothyroidism, treated with Levothyroxine, with an onset in June 2009. Regarding the relationship between thyroid function and Tamoxifen, the examiner noted that use of this drug may change the blood levels of thyroid hormone, however the "free" or functional thyroid hormone levels remain in the normal range and women taking Tamoxifen continue to have normal thyroid function. With respect to the question of whether water contamination at Camp Lejeune caused the Veteran's hypothyroidism, the examiner noted that the medical literature did not establish that there was any plausible link between the water contamination at Camp Lejeune and the onset of thyroid disorders. Based upon the evidence, the examiner opined that it was less likely than not (less than 50 percent probability) that the Veteran's hypothyroidism was proximately due to or the result of exposure to contaminated water at Camp Lejeune and/or to medication used to treat breast cancer. The examiner further noted that there was no medical literature or evidence that supported the notion that the Veteran's hypothyroidism was caused by or aggravated by the Veteran's service-connected breast cancer to include as due to medication(s) used to treat her breast cancer. Therefore, the examiner opined that it was less likely than not (less than 50 percent probability) that there was any aggravation of the Veteran's hypothyroidism. See February 2016 Thyroid Conditions Disability Benefits Questionnaire (DBQ) and Medical Opinion.

In an accompanying February 2016 VA examination for residuals of the Veteran's breast cancer, a separate VA examiner noted the Veteran's treatment history for breast cancer. In pertinent part he noted that the Veteran took Tamoxifen for five years following a full mastectomy. It was noted that Tamoxifen was needed for chemotherapy prevention more than for adjuvant therapy and that the Veteran had done well. The examiner repeated the aforementioned information regarding the relationship between Tamoxifen and thyroid function. See February 2016 VA Breast Conditions DBQ.
 
In considering the evidence of record, the Board concludes that the Veteran's claim for service connection for hypothyroidism must be denied, as a preponderance of the evidence weighs against a finding that the Veteran's hypothyroidism was caused by her military service, to include as presumptively related to her presumed exposures to contaminated drinking water at Camp Lejeune as well as secondary to her service-connected breast cancer and breast cancer treatment.

The Veteran has asserted her belief that her thyroid disorder was caused by her in-service exposure to contaminated water. Though the Veteran served at Camp Lejeune and is presumed to have been exposed to contaminated water, hypothyroidism is not among the disorders enumerated under 38 C.F.R. § 3.309 (f) as presumptively related to exposure to contaminated drinking water at Camp Lejeune. Thus, service connection is not warranted on a presumptive basis. 

The Board has considered direct causation, but the evidence of record fails to establish that the Veteran's hypothyroidism is attributable to her service. The Veteran has not alleged an in-service onset of her hypothyroidism and by all accounts the condition did not manifest until June 2009, more than 40 years after military service. In the February 2016 VA examination, the examiner opined that it was less likely than not (less than 50 percent probability) that the Veteran's hypothyroidism was proximately due to or the result of exposure to contaminated water at Camp Lejeune. As rationale, the examiner noted that the medical literature did not establish that there was any plausible link between the water contamination at Camp Lejeune and the onset of thyroid disorders. The examiner's discussion and consideration of the pertinent medical literature on the relationship between Camp Lejeune water contaminants and thyroid disorders encompasses consideration of the generic relationship between thyroid disorders and environmental chemicals as presented in the literature submitted by the Veteran. 

Further, the only evidence submitted etiologically linking the Veteran's hypothyroidism to her in-service exposure to contaminated water is the Veteran's own assertions that because some environmental chemicals can affect thyroid function, it is reasonable to conclude that her hypothyroidism is related to her exposure to water contaminants during military service. While lay persons may provide competent evidence as to observable symptomatology and/or the occurrence of events, the statement that the Veteran's current hypothyroidism was caused by exposure to contaminated drinking water draws a medical conclusion which the Veteran is not qualified to make. Although lay persons are competent to provide opinions on some medical issues, the etiology of the Veteran's hypothyroidism is a complex medical question which falls outside the realm of common knowledge. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). The Board therefore finds that the Veteran's general conclusory assertions as to the cause of her hypothyroidism, while likely genuine, are not probative in this context.

The Board notes the aforementioned articles, "Environmental chemicals targeting thyroid" and "Thyroid-Disrupting Chemicals: Interpreting Upstream Biomarkers of Adverse Outcomes," which the Veteran has submitted in support of her contention that chemicals can affect thyroid function. The Court has held that a medical article or treatise "can provide important support when combined with an opinion of a medical professional" if the medical article or treatise evidence discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least "plausible causality" based upon objective facts rather than on an unsubstantiated lay medical opinion. Mattern v. West, 12 Vet. App. 222, 228 (1999); see also Sacks v. West, 11 Vet. App. 314 (1998) and Wallin v. West, 11 Vet. App. 509 (1998). In the present case, the treatise evidence submitted by the Veteran is not specifically accompanied by the opinion of any medical expert linking her symptoms or hypothyroidism to her service. Thus, this evidence is not sufficient to place the nexus question presented in this case in relative equipoise. 

Lastly, the Board has considered the Veteran's theory of secondary service connection. The Veteran has asserted that because she had no thyroid problems before breast cancer treatment, that the drug used to treat her cancer, Tamoxifen, must have contributed to her hypothyroidism. The Board finds that the evidence of record fails to establish that the Veteran's hypothyroidism is secondary to her service-connected breast cancer or secondary to the medication Tamoxifen, which was used to treat the condition. The VA examiner noted that use of Tamoxifen may change the blood levels of thyroid hormone, however the "free" or functional thyroid hormone levels remain in the normal range and women taking Tamoxifen continue to have normal thyroid function. The examiner opined that it was less likely than not (less than 50 percent probability) that the Veteran's hypothyroidism was proximately due to or the result of medication used to treat breast cancer. Further, he indicated that there was no medical literature or evidence that supported the notion that the Veteran's hypothyroidism was caused by or aggravated by her service-connected breast cancer to include as due to medication(s) used to treat her breast cancer and that it was less likely than not (less than 50 percent probability) that there was any aggravation of the Veteran's hypothyroidism.

Again, the only evidence submitted etiologically linking the Veteran's hypothyroidism to her service-connected breast cancer or Tamoxifen is the Veteran's own assertion that because she did not experience any thyroid problems prior to having breast cancer, and taking Tamoxifen, that there must have been a causal relationship between her breast cancer treatment and her current hypothyroidism. Again the Board finds that this is a complex medical question which falls outside the realm of the Veteran's knowledge. See Kahana; Jandreau, supra. Accordingly, the Board assigns little probative value to these assertions. 

Overall, the Board places great probative weight on the February 2016 VA examination opinion which found no nexus between the Veteran's hypothyroidism and active military service, to include as due to exposure to contaminated water at Camp Lejeune and as secondary to breast cancer and/or breast cancer treatment. The opinion clearly reflected consideration of the Veteran's STRs, private treatment records, and lay statements concerning the onset of symptoms, and provides a complete rationale supported by the evidence of record. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion...must support its conclusion with an analysis that the Board can consider and weigh against contrary opinion.")

Notably, there is no contrary medical evidence of record to refute the February 2016 VA opinion. In this regard, none of the Veteran's post-service treatment records, including her private treatment records, suggest that her hypothyroidism was caused by her active duty service, to include exposure to contaminated water or as secondary to breast cancer and/or breast cancer treatment. 

As a preponderance of the evidence is against entitlement to service connection for hypothyroidism, to include as due to exposure to contaminated water at Camp Lejeune and as secondary to breast cancer and/or breast cancer treatment, denial of the benefit sought is required and the benefit of the doubt doctrine does not apply. 38 U.S.C. § 5107(b); see generally Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001); see Gilbert, supra.


ORDER

Entitlement to service connection for hypothyroidism, to include as due to exposure to contaminated water at Camp Lejeune and as secondary to breast cancer and/or breast cancer treatment is denied.



____________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs